IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:16-CV-00167-RN

**Sylvia Swan,**

                Plaintiff,

v.

**Nancy A. Berryhill**, Acting
Commissioner of Social Security,[1]

                Defendant.

**Memorandum & Order**

Plaintiff Sylvia Swan instituted this action on May 25, 2016, to challenge the denial of her application for social security income. Swan claims that the Administrative Law Judge ("ALJ") William Andersen erred in failing to resolve inconsistencies between the residual functional capacity ("RFC") he assessed and a functional capacity revaluation ("FCE") contained in the record. Swan also maintains that ALJ Andersen erred in failing to assign weight to the North Carolina disability determination regarding her eligibility for long-term disability benefits. Both Swan and Defendant Nancy Berryhill, the Acting Commissioner of Social Security, have filed motions seeking a judgment on the pleadings in their favor. D.E. 15, 17.

After reviewing the parties' arguments, the court has determined that ALJ Andersen erred in assigning significant weight to the FCE without explaining the apparent inconsistency it presented with his RFC determination. Additionally, the court is unable to determine the weight ALJ Andersen accorded to Swan's state disability determination. Therefore, the undersigned

---

[1] Berryhill replaced Carolyn Colvin as the Acting Commissioner of Social Security on January 20, 2017.

magistrate judge grants Swan's motion, denies Berryhill's motion, and remands the matter to the Commissioner for further consideration.[2]

I. Background

On May 10, 2012, Swan filed an application for disability benefits. In her application, Swan alleged that she lived with a disability that began on July 17, 2008. After her claim was denied at the initial level and upon reconsideration, Swan appeared before an ALJ Andersen on June 19, 2014 to determine whether she was entitled to benefits. ALJ Andersen determined Swan was not entitled to benefits because she was not disabled. Tr. at 43–52.

ALJ Andersen found that Swan had the following severe impairments: osteoarthritis and allied disorders, dysfunction in the major joints, carpal tunnel syndrome ("CTS"), and obesity. *Id.* at 45. ALJ Andersen found that Swan's impairments, alone or in combination, did not meet or equal a Listing impairment. *Id.* at 46. He then determined that Swan had the RFC to perform light work with limitations. *Id.* She can occasionally to frequently handle and finger with her right hand. *Id.* Swan can occasionally climb ramps and stairs, but she cannot climb ladders. *Id.* Swan can occasionally stoop, kneel, crouch, and crawl and she can occasionally work around unprotected heights. *Id.*

ALJ Andersen concluded that Swan was unable to perform her past relevant work as a school bus driver but that considering her age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Swan was capable of performing. *Id.* at 50. These jobs included: office helper, call out operator, and order clerk. *Id.* at 51. Thus, ALJ Andersen found that Swan was not disabled. *Id.* at 52.

---

[2] The parties have consented to jurisdiction by a United States Magistrate Judge. 28 U.S.C. § 636(c). D.E. 21.

After unsuccessfully seeking review by the Appeals Council, Swan commenced this action on May 25, 2016. D.E. 5.

## II. Analysis

### A. Standard for Review of the Acting Commissioner's Final Decision

When a social security claimant appeals a final decision of the Commissioner, the district court's review is limited to the determination of whether, based on the entire administrative record, there is substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); *Richardson* v. *Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Shively* v. *Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws* v. *Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). If the Commissioner's decision meets this standard, it must be affirmed. *Smith* v. *Chater*, 99 F.3d 635, 638 (4th Cir. 1996).

### B. Standard for Evaluating Disability

In making a disability determination, the ALJ engages in a five-step evaluation process. 20 C.F.R. § 404.1520; *see Johnson* v. *Barnhart*, 434 F.3d 650 (4th Cir. 2005). The analysis requires the ALJ to consider the following enumerated factors sequentially. At step one, if the claimant is currently engaged in substantial gainful activity, the claim is denied. At step two, the claim is denied if the claimant does not have a severe impairment or combination of impairments significantly limiting him or her from performing basic work activities. At step three, the claimant's impairment is compared to those in the Listing of Impairments. *See* 20 C.F.R. Part 404, Subpart P, App. 1. If the impairment is listed in the Listing of Impairments or if it is equivalent to a listed impairment, disability is conclusively presumed. However, if the claimant's impairment does not meet or equal a listed impairment, the ALJ assesses the claimant's RFC to determine, at

step four, whether he can perform his past work despite his impairments. If the claimant cannot perform past relevant work, the analysis moves on to step five: establishing whether the claimant, based on his age, work experience, and RFC can perform other substantial gainful work. The burden of proof is on the claimant for the first four steps of this inquiry, but shifts to the Commissioner at the fifth step. *Pass* v. *Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

## C. Medical Background

The relevant medical evidence demonstrates the following: Swan injured her right shoulder, neck, and back when she fell out of a bus in July 2008. Tr. at 65. She sought treatment for persistent pain and a limited range of motion ("ROM"). *Id.* at 320, 473, 489–90, 502. In June 2009, medical providers diagnosed Swan with right shoulder impingement with rotator cuff tendonitis and tear. *Id.* at 461. Despite undergoing surgery on her right shoulder the following month, Swan continued to experience pain and paresthesias in her extremities. *Id.* at 307, 319. Swan also received injections for pain in her right hip. *Id.* at 322.

An October 2009 nerve conduction study revealed median neuropathies in both wrists consistent with bilateral carpal tunnel syndrome. *Id.* at 326. A history of cervical herniated nucleus pulposus was also noted. *Id.* at 314. In December 2009, Swan began physical therapy, and treatment notes reflect that she experienced significant right shoulder pain and reduced strength. *Id.* at 341, 343, 349, 353–54, 357–58. Although there was some improvement, she continued to have pain and a reduced ROM. *Id.* at 333–34.

A cervical spine MRI revealed disc protrusions at C5–6 which were compressing her spinal cord. *Id.* at 441. Swan continued to complain that her right-side pain was worsened by activity and interfered with her ability to sleep. *Id.* at 392. Despite receiving cervical epidural injections in April and May 2010, her pain persisted. *Id.* at 386.

In May and June 2012, Swan's providers noted decreased ROM in her shoulder, intermittent numbness and tingling in the right hand, and decreased strength. *Id.* at 385, 431, 434–35. A repeat MRI performed in August 2010 showed a re-tearing of Swan's rotator cuff. *Id.* at 423–24. Swan continued to report pain and limited use of her right arm. *Id.*

Swan underwent a Functional Capacity Evaluation ("FCE") with physical therapist Anna Davidow on September 24, 2010. *Id.* at 371–83. Davidow noted that Swan was capable of performing light work. *Id.* at 371. She opined that Swan could push or pull ten pounds frequently and 18–32 pounds occasionally. *Id.* at 371–72. She further concluded that Swan could only occasionally lift six to seven pounds and frequently lift four to six pounds. *Id.* at 372. Davidow noted Swan's pain, limited strength, and fatigue throughout the testing. *Id.* at 371, 379, 381.

Swan continued to receive follow-up orthopedic care throughout 2011 and 2012. During these assessments, Swan complained of pain in her neck, lower back, right shoulder, hand, and right leg. *Id.* at 416–22, 496.

Dr. Ramnik Zota performed a consultative examination in August 2012. *Id.* at 565–70. Dr. Zota noted that Swan had normal gait but difficulty walking heel-to-toe, squatting, and rising, as well as reduced grip strength and limited ROM in her right shoulder. *Id.* at 566. She also showed some limitation in ROM in her cervical and lumbar spine. *Id.* at 569. A lumbar MRI later that month revealed degenerative disc disease. *Id.* at 578.

Swan sought treatment at the Carolina Back Institute in August 2012 for numbness and tingling in her hands and pain in her feet. *Id.* at 571–83. Swan reported that her medications were not helping her pain. *Id.* at 571.

Swan returned to her orthopedist in February 2013 with complaints of neck pain with sharp spasms. She demonstrated limited ROM in the cervical spine, and her provider opined that her

5

condition may have developed as a result of her multilevel degeneration of the cervical spine. *Id.* at 617.

Swan had right carpal tunnel release surgery in March 2013. *Id.* at 588. In May and again in August, Swan sought treatment for numbness as well as shoulder, neck, and back pain. *Id.* at 620, 628. Examinations noted discomfort and tenderness as well as limited ROM. *Id.* at 620. Providers suspected a recurrent rotator cuff tear, and an MRI revealed degenerative fraying of the superior and post-superior labrum. *Id.* at 593.

On October 21, 2013, Dr. Walter Chmelewski of Triangle Arthritis and Rheumatology examined Swan. *Id.* at 599–600. He noted that she had some difficulty with her grip, tenderness with ROM in both shoulders and in the neck, and diffuse tenderness in the low back *Id.* at 599. Chmelewski did not believe that Swan's spine condition warranted access to handicap parking. *Id.* at 600.

Throughout 2013 and 2014, Swan continued to experience right shoulder, right leg, neck, back, and bilateral hand pain. *Id.* at 590–91, 609, 640, 649–50. She remarked that her pain worsened with activity and that she experienced decreased sensation in her hands and feet. *Id.*

**D.     Is the Residual Functional Capacity Consistent with the Functional Capacity Evaluation?**

Swan asserts that ALJ Andersen's disability determination fails to resolve a conflict between his RFC and the FCE to which he assigned significant weight. Specifically, ALJ Andersen concluded that Swan could perform work at a light exertional level, which permits lifting or carrying up to 10 pounds frequently and up to 20 pounds occasionally. He afforded significant weight to Davidow's assessment, which included an FCE restricting Swan to frequently lifting or carrying only four to five pounds and occasionally lifting or carrying only six to seven pounds.

6

Swan contends the conflict between these two conclusions is not resolved in ALJ Andersen's decision, which thus warrants remand.

The RFC is a determination, based on all the relevant medical and non-medical evidence, of what a claimant can still do despite her impairments; the assessment of a claimant's RFC is the responsibility of the ALJ. *See* 20 C.F.R. §§ 404.1520, 404.1545, 404.1546; SSR 96–8p, 1996 WL 374184, at *2. If more than one impairment is present, the ALJ must consider all medically determinable impairments, including medically determinable impairments that are not "severe," when determining the claimant's RFC. *Id.* §§ 404.1545(a), 416.945(a). The ALJ must also consider the combined effect of all impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. *Id.* § 404.1523; *see Walker* v. *Bowen*, 889 F.2d 47, 50 (4th Cir. 1989) ("[I]n evaluating the effect[] of various impairments upon a disability benefit claimant, the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them.").

An ALJ is not bound to accept or adopt all the limitations set out in a medical opinion, even if he accords it significant weight. *See Bennett* v. *Colvin,* No. 3:13-CV-01176, 2015 WL 153950, at *13 (M.D. Tenn. Jan. 12, 2015) (holding that ALJ who accords great weight to opinion not required to adopt that opinion wholesale); *Razey* v. *Colvin*, No. 14–23, 2014 WL 4792150, at *2 (W.D. Pa. Sept. 23, 2014) (ruling that ALJ not required to adopt a medical opinion wholesale); *Lambert–Newsome* v. *Astrue*, No. 11–1141-CJP, 2012 WL 2922717, at *6 (S.D. Ill. July 17, 2012) (noting that merely because ALJ gave great weight to an opinion "does not mean he was required to adopt it wholesale"); *Irvin* v. *Astrue*, No. EDCV 11–23-AJW, 2012 WL 870845, at *2–3 (C.D. Cal. March 14, 2012) (finding that, although ALJ gave great weight to medical source opinion, he did not err in implicitly rejecting one limitation from that opinion); *Armentrout* v. *Astrue*, No.

3:10-cv-504, 2011 WL 4625931, at *7 (E.D. Va. June 2, 2011) ("While the ALJ assigned 'significant' probative weight to the opinion, the ALJ was not then required to adopt every limitation and incorporate them into the RFC analysis."), *adopted by,* 2011 WL 4625912 (E.D. Va. Oct. 3, 2011). However, as the Fourth Circuit recently noted, remand may be appropriate where "inadequacies in the ALJ's analysis frustrate meaningful review[.]" *Monroe* v. *Colvin*, -- F.3d --, No. 15–1098, 2016 WL 3349355, at *10 (4th Cir. June 16, 2016) (quoting *Mascio* v. *Colvin*, 780 F.3d 632, 636 (4th Cir. 2015)).

ALJ Andersen gave significant weight to Davidow's findings and also concluded that Swan had an RFC consistent with light work. He stated that Davidow' s opinion "is consistent with . . . Swan's ability to perform light work." Tr. at 48. Yet Davidow determined that Swan's ability to lift and carry fell below the exertional threshold compatible with light work.[3] Specifically, Davidow concluded that Swan could occasionally lift or carry only six to seven pounds, and that she could frequently lift or carry only four to six pounds. *Id.* at 370, 372.

Accordingly, the RFC finding appears inconsistent with this assessment that carried significant weight in ALJ Andersen's decision. ALJ Andersen does not explain how he resolved this conflict in his decision. It is unclear if ALJ Andersen was aware that Davidow's specific findings as to Swan's ability to lift and carry were below the exertional threshold for light work as it is defined by the Department of Labor, whether he found Davidow's reference to Swan's ability to perform "light work" within the such standards, or whether he adopted some, but not all, of Davidow's conclusions.

---

[3] Davidow's assessment for Swan's lifting and carrying ability also appears to be below the exertional level required for sedentary work, which involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. *See* SSR 83-10.

The court finds that ALJ Andersen's analysis is insufficient to permit meaningful review. As the fact-finder in the first instance, it is the ALJ, not this court, who has the responsibility to make findings of fact and resolve evidentiary conflicts. *Hays* v. *Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Because ALJ Andersen's decision fails to explain the conflict between Davidow's assessment and the RFC determination, his analysis is insufficient. S*ee Hammond* v. *Heckler*, 765 F.2d 424, 426 (4th Cir. 1985) (per curiam) (stating that an ALJ has a "duty of explanation" of what informed his decision). Accordingly, remand for further consideration is warranted.

### E. North Carolina Disability Determination

Swan also contends that ALJ Andersen erred in failing to assign weight to North Carolina's determination finding that Swan was eligible for long-term disability benefits. The Commissioner asserts that Swan did not furnish evidence of the state disability decision or the medical evidence upon which it was based. The undersigned concludes that ALJ Andersen's failure to weigh this evidence warrants remand.

As provided by 20 C.F.R. § 404.1504 and further explained in Social Security Ruling ("SSR") 06–03p, "a determination made by another agency that [the claimant is] disabled or blind is not binding on" the Social Security Administration. 20 C.F.R. § 404.1504. Rather, "the ultimate responsibility for determining whether an individual is disabled under Social Security law rests with the Commissioner." SSR 06–03p.

However, the Fourth Circuit addressed the value of disability findings by other agencies in *Bird* v. *Commissioner of Social Security Administration*, 699 F.3d 337 (4th Cir. 2012). The Fourth Circuit noted that while another agency's disability determination is not binding on the SSA, "another agency's disability determination 'cannot be ignored and must be considered.'" *Bird*, 699 F.3d at 343. The Fourth Circuit noted that often times the disability assessments serve the same

governmental purpose of providing benefits to persons unable to work, evaluate a claimant's ability to perform full-time work, analyze a claimant's functional limitations, and require extensive medical documentation to support the claims. *Bird*, 699 F.3d at 343. Assigning less weight to another governmental agency's disability determination may be warranted "when the record before the ALJ clearly demonstrates that such a deviation is appropriate." *Id.*

Here, although Swan received approval for long-term disability benefits, ALJ Andersen did not explain the weight he gave to that finding. He merely remarked that her long-term disability benefits were approved for continuation. Tr. at 47.

The Commissioner maintains that neither that decision, nor the medical evidence supporting it, are contained in the record. Instead, she submits, the only evidence Swan offered of this other disability finding are a January 2014 letter stating she was entitled to long-term disability benefits, an undated letter indicating that the benefits were continued, and a June 2014 letter setting forth the amount of the long-term disability benefit.

A review of a North Carolina Retirement Systems Medical Board report indicates that the finding was based on Swan's right shoulder pathologies, including her rotator cuff tear and its recurrence following surgery. Tr. at 293. The record for her present claim contains abundant evidence of this impairment. Presumably, North Carolina's disability finding relied upon many of the same records Swan presented for her instant disability application. Notably, ALJ Andersen found that the medical evidence established that Swan's shoulder condition was a severe impairment, significantly limiting her ability to perform basic work activity. Consequently, the Commissioner's argument is unpersuasive. *See Worthington* v. *Astrue*, No. 7:11–cv–00207-FL, 2012 WL 4026067, at *4 (E.D.N.C. Sept. 12, 2012) (although plaintiff failed to submit any notice or decision of disability from the issuing agency, the fact that she was receiving state disability

was noted in the record and ALJ should have further developed the record on this point to the extent necessary to evaluate this evidence as required by SSR 06–03p).

Whether the evidence submitted sufficiently addresses the reasons for North Carolina's disability determination or not, the ALJ must still explain the weight it is due. *See Bannister* v. *Colvin*, No. 1:14-cv-741, 2015 WL 5027530, at *6 (M.D.N.C. Aug. 25, 2015) (citing *Bird*, 699 F.3d at 343) (noting that although another agency's disability determination is not binding on the SSA, such a determination cannot be ignored and must be considered); *Wilson* v. *Colvin*, No. 1:11-CV-256, 2014 WL 4274253, at *5–6 (M.D.N.C. Aug. 29, 2014), *adopted, slip op.* (M.D.N.C. Sept. 17, 2014); *Baughman* v. *Colvin*, No. 5:13–CV–143–FL, 2014 WL 3345030, at *8 (E.D.N.C. July 8, 2014) (remand because ALJ failed to provide sufficient reasons for dismissing Medicaid decision so as to permit meaningful review); *Ward* v. *Colvin*, Civ. Act. No. 2:12–03654–RMG–BHH, 2014 WL 545894, at *2–3 (D.S.C. Feb. 10, 2014) (remand where ALJ did not discuss the South Carolina Retirement System determination that plaintiff was disabled from his correctional officer position); *Suggs* v. *Astrue*, No. 4:11–CV–128–FL, 2013 WL 466406, at *4 (E.D.N.C. Feb. 7, 2013) (not harmless error where ALJ failed to consider VA disability determination because it may have a bearing on the Social Security determination); *Watson* v. *Astrue*, No. 5:08–CV–553–FL, 2009 WL 2423967, at *3 (E.D.N.C. Aug. 6, 2009) (noting that remand is proper where an ALJ fails to explain weight given to a state Medicaid decision)). Given that remand of the matter is warranted in light of *Mascio*, the NCHHS Medicaid decision should be considered upon remand in accordance with *Bird* and SSR 06–03p.[4]

---

[4] On remand, the ALJ might well conclude on this record that Swan's approval for long-term disability benefits should be given some, little, or no weight. But that analysis is for the ALJ to perform in the first instance inasmuch as it is not the role of a reviewing court to substitute its own analysis of the evidence. *Persaud* v. *Colvin*, No. 2:12-cv-661, 2014 WL 198922, at *11 (E.D. Va. Jan. 14, 2014).

**III.     Conclusion**

For the forgoing reasons, the court grants Swan's Motion for Judgment on the Pleadings (D.E. 15), denies Berryhill's Motion for Judgment on the Pleadings (D.E. 17), and remands this matter to the Commissioner for further consideration consistent with the findings herein.

Dated:  May 10, 2017

_____
Robert T. Numbers, II
United States Magistrate Judge